**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

HANNAH BOCKER, SARAH BOCKER and   :
BARBARA BOCKER as Administrator of   :
the Estate of GERARD BOCKER and   :
BARBARA BOCKER, Individually   :
  :
    Plaintiffs,   :   C.A. NO.:1:21-cv-01174-UNA
  :
    v.   :
  :
HARTZELL ENGINE TECHNOLOGIES   :
LLC;   :
2900 Selma Highway   :   JURY TRIAL DEMANDED
Montgomery, AL 36108;   :
  :
CONTINENTAL AEROSPACE   :
TECHNOLOGIES, INC. f/k/a   :
CONTINENTAL MOTORS, INC.   :
2039 S. Broad Street   :
Mobile, AL 36615; and JOHN DOES 1-10;   :
  :
    Defendants.   :
  :

<u>**HARTZELL ENGINE TECHNOLOGIES LLC'S
ANSWER TO PLAINTIFFS' AMENDED COMPLAINT**</u>

NOW COMES the Defendant, HARTZELL ENGINE TECHNOLOGIES LLC ("HET"),

by counsel, and for its Answer and Affirmative Defenses to Plaintiffs' Amended Complaint, states

as follows:

**THE PARTIES**

1.    At all times herein mentioned, Plaintiff HANNAH BOCKER was and still is a

resident of the County of Dutchess, State of New York.

**ANSWER:    Defendant HET lacks knowledge or information sufficient to form a belief
about the truth of the allegations contained in Paragraph 1 of the Amended
Complaint.**

2. At all times herein mentioned, Plaintiff BARABARA BOCKER was and still is a resident of the County of Dutchess, State of New York.

**ANSWER:** **Defendant HET lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in Paragraph 2 of the Amended Complaint.**

3. On June 29, 2020 BARABARA BOCKER was appointed by the Dutchess County Surrogate as Administrator of the Estate of GERARD BOCKER, and was the wife of GERARD BOCKER at the time of his death.

**ANSWER:** **Defendant HET lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in Paragraph 3 of the Amended Complaint.**

4. At all times herein mentioned, Plaintiff SARAH BOCKER was and still is a resident of the County of Dutchess, State of New York.

**ANSWER:** **Defendant HET lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in Paragraph 4 of the Amended Complaint.**

5. Plaintiffs HANNAH BOCKER and SARAH BOCKER are each natural daughters of Plaintiff BARBARA BOCKER and GERARD BOCKER, deceased. Also surviving GERARD BOCKER is his natural son, WILLIAM BOCKER.

**ANSWER:** **Defendant HET lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in Paragraph 5 of the Amended Complaint.**

6. Defendant CONTINENTAL MOTORS, INC. n/k/a CONTINENTAL AERO CONTINENTAL AEROSPACE TECHNOLOGIES, INC. ("Continental") is a Delaware corporation and maintains a principal place of business at 2039 S. Broad Street, Mobile, Alabama 36615.

**ANSWER:** **Upon information and belief, Defendant HET admits the allegations contained in Paragraph 6.**

7.     Defendant HARTZELL ENGINE TECNOLOGIES LLC ("Hartzell") is a Delaware corporation and maintains a principal place of business at 2900 Selma Highway, Montgomery, Alabama 36108.

**ANSWER:    Defendant HET admits that it is a Delaware LLC with its principal place of business in Ohio, and its facilities located in Montgomery, Alabama. HET denies any remaining allegations contained in Paragraph 7 of the Amended Complaint.**

8.     JOHN DOES 1-10 are individuals who serviced, inspected, repaired, maintained, modified or overhauled the aforementioned Cessna model 303 airplane bearing registration number N303TL on or before August 17, 2019, true identities unknown.

**ANSWER:    Defendant HET lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in Paragraph 8 of the Amended Complaint.**

9.     On August 17, 2019 and all times herein mentioned the residence of the plaintiffs located at 235 South Smith Road, Union Vale, New York was in the known flight path of Sky Acres Airport.

**ANSWER:    Defendant HET lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in Paragraph 9 of the Amended Complaint.**

### JURISDICTION AND VENUE

10.     This action is based on diversity jurisdiction pursuant to 28 U.S.C. § 1332 as Plaintiffs are citizens of different states from Defendants and the amount in controversy exceeds $75,000.00.

**ANSWER:    Upon information and belief, Defendant HET admits the allegations contained in Paragraph 10 of the Amended Complaint.**

11.     Jurisdiction in this District is also proper since one or more Defendants are incorporated in this State as set forth above. Further, all Defendants do business within this State

of Delaware, by availing themselves of the business opportunities here, regularly doing or soliciting business, engaging in other persistent course of conduct in this State, deriving substantial revenue from services, or things used or consumed in this State, advertising the availability of parts and information, shipping parts and literature into the State of Delaware, offering services to residents of the State of Delaware, and receiving money from those businesses in this State who order goods, services and parts and pay for them. In addition, Defendants supply literature to aircraft owners located within the State of Delaware, and to mechanics, fixed base operators, and others who perform maintenance in this State for purposes of providing information and knowledge as to parts that can be purchased from the Defendants for the repair of aircraft, or the repair or replacement of their engines, accessories, assemblies, components, and parts.

**ANSWER:** **Defendant HET admits that it is a Delaware LLC but denies the remaining allegations contained in Paragraph 11 of the Amended Complaint.**

12. Venue is proper in that one or more Defendants are incorporated in the State of Delaware, and all Defendants regularly conduct business in the State of Delaware and/or may be served here.

**ANSWER:** **Defendant HET admits that it is a Delaware LLC and that its registered agent is Corporation Service Company in Wilmington, Delaware; HET denies the remaining allegations contained in Paragraph 12 of the Amended Complaint.**

13. At all times mentioned herein, Defendants, and each of them, were the agents, servants, and/or employees of the remaining Co-Defendants. All Defendants were either joint tortfeasors or otherwise secondarily liable for said acts and omissions of all other Defendants.

**ANSWER:** **Defendant HET denies the allegations contained in Paragraph 13 of the Amended Complaint.**

14. The amount in question is greater than the jurisdictional amount required by this Court.

**ANSWER:** **Upon information and belief, Defendant HET admits the allegations contained in Paragraph 14 of the Amended Complaint.**

15. Thus, Jurisdiction and venue are appropriate in this Court.

**ANSWER:** **Upon information and belief, Defendant HET admits the allegations contained in Paragraph 14 of the Amended Complaint.**

## FACTUAL BACKGROUND

16. This matter arises from the August 17, 2019 crash of a Cessna T303 aircraft, bearing registration number N303TL, in Lagrangeville, New York, manufactured by Cessna, who is the current type certificate holder.

**ANSWER:** **Upon information and belief, Paragraph 16 of the Amended Complaint is admitted by Defendant HET.**

17. This aircraft is equipped with twin-piston turbocharged engines, manufactured by Continental Motors.

**ANSWER:** **Defendant HET lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in Paragraph 17 of the Amended Complaint.**

18. The aircraft was piloted by Francisco Knipping-Diaz, who sustained fatal injuries in the crash.

**ANSWER:** **Upon information and belief, Defendant HET admits that Francisco Knipping-Diaz was the pilot of the subject aircraft, but lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations contained in Paragraph 18 of the Amended Complaint.**

19. Also on board were Teófilo Antonio Diaz and Eduardo Tio as passengers, who survived the crash.

**ANSWER:** **Defendant HET lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in Paragraph 19 of the Amended Complaint.**

20.     The accident aircraft had landed at Sky Acres Airport (44N) in Lagrangeville, New York, where it received fuel before takeoff, following a business meeting at Orange County Airport (MGJ) in Montgomery, New York.

**ANSWER:     Defendant HET lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in Paragraph 20 of the Amended Complaint.**

21.     After receiving fuel, the pilot started the engines of the accident aircraft, and departed Sky Acres Airport in day visual meteorological conditions, with a destination of Republic Airport (KFRG) in Farmingdale, New York.

**ANSWER:     Defendant HET lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in Paragraph 21 of the Amended Complaint.**

22.     The pilot then departed the airport on Runway 17 at Sky Acres.

**ANSWER:     Defendant HET lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in Paragraph 22 of the Amended Complaint.**

23.     Shortly after takeoff the aircraft lost engine power at a low altitude, and was unable to climb.

**ANSWER:     Defendant HET lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in Paragraph 23 of the Amended Complaint.**

24.     The aircraft began to drift left, and the pilot attempted to straighten its course, continuing over the end of the runway and approached obstacles.

**ANSWER:     Defendant HET lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in Paragraph 24 of the Amended Complaint.**

25.     Ultimately the plane was unable to climb due to the power loss, rolled left and impacted the Bocker residence, trees and the ground.

**ANSWER:** **Defendant HET lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in Paragraph 25 of the Amended Complaint.**

26.      Inside the Bocker residence was Hannah Bocker, her father Gerard Bocker, and sister Sarah Bocker.

**ANSWER:** **Defendant HET lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in Paragraph 26 of the Amended Complaint.**

27.      The aircraft almost immediately burst into flames as did the Bocker's house.

**ANSWER:** **Defendant HET lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in Paragraph 27 of the Amended Complaint.**

28.      In fact, Hannah and her father, Gerard Bocker, were inside, and witnessed the conflagration which ensued.

**ANSWER:** **Defendant HET lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in Paragraph 28 of the Amended Complaint.**

29.      Sadly, Gerard Bocker was consumed by the fire and perished.

**ANSWER:** **Defendant HET lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in Paragraph 29 of the Amended Complaint.**

30.      Hannah Bocker was severely burned all over her body due to the fire.

**ANSWER:** **Defendant HET lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in Paragraph 30 of the Amended Complaint.**

31.      Sarah Bocker, was able to jump out of a window of the house, suffering injuries and witnessing the horrors which befell her family.

**ANSWER:** **Defendant HET lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in Paragraph 31 of the Amended Complaint.**

## BACKGROUND OF THE ACCIDENT AIRCRAFT AND ITS ENGINES

32.     The accident Cessna T303 "Crusader" (the "Crusader" or "T303") is pictured, below:



**ANSWER:     Defendant HET admits that the photograph in Paragraph 32 of the Amended Complaint appears to depict an aircraft with FAA Registration No. N303TL, but denies any remaining allegations contained therein.**

33.     The aircraft has a cabin which seats four passengers, with room for a pilot and an additional crew member or passenger in the front.

**ANSWER:     Defendant HET lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in Paragraph 33 of the Amended Complaint.**

34.     It is equipped with two Continental (L)TSIO-520-AE3B piston engines each rated at 250 HP, which were counter-rotating and turbocharged.

**ANSWER:     Defendant HET lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in Paragraph 34 of the Amended Complaint.**

35.     The purpose of turbocharging an engine is to increase its performance at higher altitudes, as the air thins and becomes less dense, so that the fuel/air mixture can remain at or close to that at sea-level.

**ANSWER:     Defendant HET denies that Paragraph 35 of the Amended Complaint adequately describes the function and operation of turbochargers.**

36.     In the event that a turbocharger malfunctions or seizes, then the engine will not receive an appropriate fuel/air mixture and cause a loss of power.

**ANSWER:     Defendant HET denies the allegations contained in Paragraph 36 of the Amended Complaint.**

37.     The turbochargers and associated components, including the wastegates and controllers in the accident aircraft are the responsibility of the defendant Hartzell.

**ANSWER:     Defendant HET denies the allegations contained in Paragraph 37 of the Amended Complaint.**

38.     The turbochargers have part numbers 406610-9030.

**ANSWER:     Defendant HET admits that one of the turbocharger data plates had part number 406610-9030 on it but HET lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations contained in Paragraph 38 of the Amended Complaint.**

39.     The defendant Hartzell assumed responsibility for the turbocharger line from Kelly Aerospace.

**ANSWER:     Defendant HET denies the allegation contained in Paragraph 39 of the Amended Complaint.**

40.     Upon information and belief, AiResearch, Inc., was purchased by and merged with and/or changed its name to Garrett AiResearch Corp. Garrett AiResearch Corp. was subsequently purchased by and merged with and/or changed its name to Garrett Corp. Garrett Corp. was purchased by and merged into Signal Oil & Gas Co. in 1964. Signal Oil & Gas Co. changed its name to Signal Companies, Inc. in 1968. Signal Companies, Inc. merged with Allied Corp. to form Allied-Signal Inc. in 1985. AlliedSignal Inc. changed its name to Honeywell International, Inc., in 1999. Subsequent to that sale and merger, the turbocharger's product line holder became Kelly Aerospace, and then transferred that product line to the defendant Hartzell at all times material hereto.

**ANSWER:** **Defendant HET lacks knowledge or information sufficient to form a belief about the truth of the allegations concerning the alleged history of the entities described in Paragraph 40 but denies that responsibility or liability for turbocharger products manufactured, sold, repaired and/or overhauled by those entities transferred to HET. HET denies any remaining allegations contained in Paragraph 40 of the Amended Complaint.**

41. AiResearch, Inc., Garrett AiResearch Corp., Garrett Corp., Signal Oil & Gas Co., Signal Companies, Inc., Allied-Signal Inc., and AlliedSignal, Inc. no longer have any corporate existence, and have had all of their assets, product lines, liabilities, good will, trade names, patents, employees and accounts receivable transferred to defendant Hartzell, who assumed all liabilities of these companies.

**ANSWER:** **Defendant HET lacks knowledge or information sufficient to form a belief about the truth of the allegations concerning the alleged history and corporate status of the entities described in Paragraph 41 but denies that responsibility or liability for turbocharger products manufactured, sold, repaired and/or overhauled by those entities transferred to HET. HET denies any remaining allegations contained in Paragraph 41 of the Amended Complaint.**

42. As Hartzell's corporate predecessors (AiResearch, Inc., Garrett AiResearch Corp., Garrett Corp., Signal Oil & Gas Co., Signal Companies, Inc., Allied-Signal Inc., and AlliedSignal, Inc., etc.) no longer exist, and others have transferred the product line entirely to defendant Hartzell, who is the successor in interest for the turbocharging components aboard the accident aircraft.

**ANSWER:** **Defendant HET lacks knowledge or information sufficient to form a belief about the truth of the allegations concerning the alleged history and corporate status of the entities described in Paragraph 42 but denies that responsibility or liability for turbocharger products manufactured, sold, repaired and/or overhauled by those entities transferred to HET or that HET is the corporate successor in interest to those entities. HET denies any remaining allegations contained in Paragraph 42 of the Amended Complaint.**

43. The Crusader, is further notorious for its difficult handling conditions, particularly when a power loss occurs.

**ANSWER:** **Defendant HET lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in Paragraph 43 of the Amended Complaint.**

44.     In the event of single engine operation due to a power loss in one engine, rudder

trim is inadequate to overcome the adverse yaw of one engine.

**ANSWER:** **Defendant HET lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in Paragraph 44 of the Amended Complaint.**

45.     The Crusader further has a low climb rate, which becomes negligible in the event

of a loss of power.

**ANSWER:** **Defendant HET lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in Paragraph 45 of the Amended Complaint.**

46.     Furthermore, in the event that a power loss occurs on takeoff, the Crusader has a

very long accelerate/stop distance, giving a pilot the inability to try and accelerate to takeoff and

then stop on the runway such as at Sky Acres, in the event of an emergency.

**ANSWER:** **Defendant HET lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in Paragraph 46 of the Amended Complaint.**

47.     Worse yet, the single engine climb rate of the Crusader is negative until the gear

are raised with a wind-milling prop, and increases further if the propeller is not feathered, leaving

no margin of safety in in the design of the aircraft in the event of a power loss.

**ANSWER:** **Defendant HET lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in Paragraph 47 of the Amended Complaint.**

48.     For these reasons, it is critical the engines perform on takeoff, and if they do not, a

pilot is faced with a dangerous and immediate emergency situation.

**ANSWER:** **Defendant HET lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in Paragraph 48 of the Amended Complaint.**

49. In normal operation, T303 Crusaders have a history of engine power losses due to fuel delivery malfunctions and malfunctions of turbochargers.

**ANSWER:** **Defendant HET lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in Paragraph 49 of the Amended Complaint.**

50. In the event of a turbocharger malfunction, a power loss is imminent, which is particularly dangerous on takeoff.

**ANSWER:** **Defendant HET denies the allegations contained in Paragraph 50 of the Amended Complaint as alleged.**

### ACCIDENT INVESTIGATION

51. Post-crash investigation confirmed the witness statements that the aircraft suffered a loss of power, resulting in its failure to climb, and inability for the pilot to maintain directional control.

**ANSWER:** **Defendant HET lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in Paragraph 51 of the Amended Complaint.**

52. This loss of power occurred unexpectedly, just after the aircraft took off from the airport.

**ANSWER:** **Defendant HET lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in Paragraph 52 of the Amended Complaint.**

53. The pilot of the aircraft, Francisco Knipping-Diaz, was not able to climb in the aircraft following this power loss.

**ANSWER:** **Upon information and belief, Defendant HET admits that Francisco Knipping-Diaz was the pilot of the subject aircraft, but lacks knowledge or**

**information sufficient to form a belief about the truth of the remaining allegations in Paragraph 53 of the Amended Complaint.**

54. As such, the pilot made a forced landing on the Bocker residence, and the aircraft and the house immediately caught fire.

**ANSWER:** **Upon information and belief, Defendant HET admits that the subject aircraft impacted a house, but lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 54 of the Amended Complaint.**

55. Plaintiffs Hannah Bocker, Sarah Bocker and their father, Gerard Bocker, deceased, were inside the residence at the time.

**ANSWER:** **Defendant HET lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in Paragraph 55 of the Amended Complaint.**

56. Post-crash investigation of the accident aircraft confirm [sic] that it was not capable of making sufficient power to remain airborne.

**ANSWER:** **Defendant HET lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in Paragraph 56 of the Amended Complaint.**

57. If the fuel system of the aircraft does not provide sufficient fuel, and fuel free of contaminants, the engines are unable to make rated power.

**ANSWER:** **Defendant HET denies the allegations contained in Paragraph 57 of the Amended Complaint as alleged.**

58. Further, investigation reveals that the aircraft's turbocharger wastegates were in vastly different positions, with the left wastegate nearly closed, confirming that the engine was demanding additional boost in reaction to a malfunction of the engine.

**ANSWER:** **Defendant HET lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in Paragraph 58 of the Amended Complaint.**

59.     In fact, in the event of a turbocharger seizure or induction blockage, the wastegate on an engine will attempt to raise the manifold pressure, just as was found post-accident on the subject left engine.

**ANSWER:     Defendant HET denies that Paragraph 59 accurately describes the function and operation of a turbocharger; HET lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations contained in Paragraph 59 of the Amended Complaint.**

60.     If the fuel/air mixture provided to the engine is not appropriate, it will further be unable to make rated power.

**ANSWER:     Defendant HET denies the allegations contained in Paragraph 60 of the Amended Complaint.**

61.     Furthermore, the signatures in the propellers and control levers confirm that the aircraft was not making rated power on takeoff.

**ANSWER:     Defendant HET lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in Paragraph 61 of the Amended Complaint.**

62.     Additionally, passenger and witness statements confirm the fact the accident aircraft suffered a powerplant failure and was unable to perform as a result.

**ANSWER:     Defendant HET denies the allegations contained in Paragraph 62 of the Amended Complaint.**

63.     Due to the design characteristics of the T303, above, the loss of power resulted in the inability of the aircraft to climb at a positive rate.

**ANSWER:     Defendant HET lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in Paragraph 63 of the Amended Complaint.**

64.     Moreover, the aircraft had just received fuel prior to departure.

**ANSWER:     Upon information and belief, Paragraph 64 of the Amended Complaint is admitted by Defendant HET.**

65.    The accident aircraft and its engines received regular inspections by SouthTec Aviation on or about July 17, 2019, who signed off on the aircraft as airworthy and safe to fly, as evidenced by the logbook entries which accompanied the service performed.

**ANSWER:    Defendant HET lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in Paragraph 65 of the Amended Complaint.**

66.    Prior to that inspection, Berkshire Aviation performed inspections on the accident aircraft, similarly signing off on it as airworthy and also installed an overhauled and inspected left engine in the accident aircraft following a runway incident and sudden stoppage inspection.

**ANSWER:    Defendant HET lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in Paragraph 66 of the Amended Complaint.**

67.    The left engine was inspected and repaired by Pine Mountain Aviation, who replaced numerous components during that work, including new cylinder assemblies by Continental Motors, and other new components from the defendants Hartzell and Continental herein, as well as newly overhauled magnetos, and other components necessary for the engine to run properly.

**ANSWER:    Defendant HET lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in Paragraph 67 of the Amended Complaint.**

68.    That engine was equipped with turbo components manufactured by defendant Hartzell, which did malfunction and cause and contribute to the power loss experienced on board the aircraft on the day of the accident.

**ANSWER:    Defendant HET denies the allegations contained in Paragraph 68 of the Amended Complaint.**

69.    These engine assemblies were selected by the Continental along with the aircraft's manufacturer, Cessna Aircraft Company.

**ANSWER:** **Defendant HET lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in Paragraph 69 of the Amended Complaint.**

## DAMAGES

70.    Plaintiff HANNAH BOCKER was 22 years old at the time of the accident.

**ANSWER:** **Defendant HET lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in Paragraph 70 of the Amended Complaint.**

71.    HANNAH BOCKER was in her family home when the accident aircraft impacted

it, causing it to ignite and catch fire.

**ANSWER:** **Defendant HET lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in Paragraph 71 of the Amended Complaint.**

72.    HANNAH BOCKER suffered severe burns all over her body, smoke inhalation,

fear of impending death, and jumped out of the home suffering physical injuries to avoid further

injury and death due to this crash.

**ANSWER:** **Defendant HET lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in Paragraph 72 of the Amended Complaint.**

73.    Plaintiff HANNAH BOCKER has undergone numerous surgeries and continues to

receive treatment for the injuries, disfigurement, pain and suffering she has endured due to this

accident.

**ANSWER:** **Defendant HET lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in Paragraph 73 of the Amended Complaint.**

74.    Plaintiff SARAH BOCKER was 31 years old at the time of the accident.

**ANSWER:** **Defendant HET lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in Paragraph 74 of the Amended Complaint.**

75.     SARAH BOCKER was also in the home when the aircraft impacted it, and was forced to exit through a window, witnessing the accident, fire and injuries to her sister and father.

**ANSWER:     Defendant HET lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in Paragraph 75 of the Amended Complaint.**

76.     Plaintiffs' decedent GERARD BOCKER was 61 years old at the time of the accident.

**ANSWER:     Defendant HET lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in Paragraph 76 of the Amended Complaint.**

77.     GERARD BOCKER was in his home at the time the accident aircraft impacted it and caused it to ignite.

**ANSWER:     Defendant HET lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in Paragraph 77 of the Amended Complaint.**

78.     GERARD BOCKER perished after the impact due to thermal injuries.

**ANSWER:     Defendant HET lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in Paragraph 78 of the Amended Complaint.**

79.     Before Plaintiffs' decedent GERARD BOCKER was killed on September 17, 2019, he was caused to experience excruciating conscious pain and suffering as well as fear of impending death.

**ANSWER:     Defendant HET lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in Paragraph 79 of the Amended Complaint.**

80.     GERARD BOCKER is survived by his wife, BARBARA BOCKER, and children, HANNAH BOCKER, SARAH BOCKER, and WILLIAM BOCKER, who have lost his love, care, affection, guidance, tutelage, consortium, and support.

**ANSWER:** Defendant HET lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in Paragraph 80 of the Amended Complaint.

81. Plaintiffs bring this action against Defendants seeking damages for their injuries and for the death of GERARD BOCKER. Plaintiffs seek recovery of damages to which Plaintiffs are entitled, including, but not limited to, damages pursuant to the applicable wrongful death and survival statutes, damages for personal injuries, loss of earnings, loss of net accumulations, loss of inheritance, emotional and physical pain and suffering, loss of comfort, care, companionship, past and future medical care and expenses together with damages for pre-crash and post-crash physical pain and suffering, emotional anguish, terror and fright, and negligent infliction of emotional distress.

**ANSWER:** Defendant HET denies any responsibility or liability and denies that Plaintiffs are entitled to any recovery from HET. HET denies any remaining allegations contained in Paragraph 81 of the Amended Complaint.

82. Plaintiffs seek damages for their ongoing injuries, damages, and future pain and suffering which they have as a direct result of the subject accident.

**ANSWER:** Defendant HET denies any responsibility or liability and denies that Plaintiffs are entitled to any recovery from HET. HET denies any remaining allegations contained in Paragraph 82 of the Amended Complaint.

83. Further, Plaintiffs seek punitive damages, to the extent available, for the conduct of the Defendants that caused their injuries and damages.

**ANSWER:** Defendant HET denies any responsibility or liability and denies that Plaintiffs are entitled to any recovery from HET. HET further denies that Plaintiffs are entitled to recover punitive damages. HET denies any remaining allegations contained in Paragraph 83 of the Amended Complaint.

84. Further, on August 17, 2019 and all times herein mentioned BARBARA BOCKER was a fee simple owner of the property and premises at 235 South Smith Road, Union Vale NY.

**ANSWER:** **Defendant HET lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in Paragraph 84 of the Amended Complaint.**

85. In the abovementioned airplane crash of August 17, 2019 the house which had been Plaintiffs' home at 235 South Smith Road, Union Vale NY was burned beyond repair and most of its contents destroyed.

**ANSWER:** **Defendant HET lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in Paragraph 85 of the Amended Complaint.**

86. Due to the negligent, careless and reckless acts of the defendants, Plaintiff BARABARA BOCKER lost the use and value of her home as well as her personal property and family heirlooms and became liable for a costly demolition and remediation.

**ANSWER:** **Defendant HET denies the allegations contained in Paragraph 86 of the Amended Complaint.**

87. Plaintiff BARABARA BOCKER maintains this claim for all members of her family as the title ownership of many of the items of personal property lost in the crash and fire were jointly within the family.

**ANSWER:** **Defendant HET lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in Paragraph 87 of the Amended Complaint.**

88. By reason of the foregoing, BARBARA BOCKER asserts a claim and has been damaged in a sum exceeding the jurisdictional limits required by this Court.

**ANSWER:** **Defendant HET lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in Paragraph 88 of the Amended Complaint.**

89. Plaintiffs seek recovery of all available damages, including but not limited to, loss of earnings and earning capacity, loss of net accumulations, loss of society and companionship, loss of guidance and tutelage, loss of advice and counsel, loss of life's pleasures, loss of support,

loss of services, loss of consortium, loss of inheritance, pre-impact fear, conscious pain and suffering, the pecuniary value of loss of such services, funeral and internment expenses, estate expenses, medical expenses, additional costs of household maintenance, and any other damages the fact finder deems fair and equitable.

**ANSWER:** **Defendant HET denies any responsibility or liability and denies that Plaintiffs are entitled to any recovery from HET. HET denies any remaining allegations in contained in Paragraph 89 of the Amended Complaint.**

90.     Punitive damages are demanded for the knowing, willful, unjustifiable, and outrageous conduct by the Defendants in ignoring the actual knowledge, actual warnings, actual signs and actual experience with the serious risk of injury or death, without doing anything to prevent serious personal injury or death as a result.

**ANSWER:** **Defendant HET denies any responsibility or liability and denies that Plaintiffs are entitled to any recovery from HET. HET further denies that Plaintiffs are entitled to recover punitive damages. HET denies any remaining allegations contained in Paragraph 90 of the Amended Complaint.**


### Count I
### (STRICT LIABILITY)
### *Plaintiffs v. Defendant Continental Motors*

The allegations of Paragraphs 91-108 of Count I of the Amended Complaint are not directed to HET and therefore HET provides no answer thereto. Insofar as the allegations are directed to HET, HET denies the allegations of Paragraphs 91-108 of Count I of the Amended Complaint.


### Count II
### (NEGLIGENCE)
### *Plaintiffs v. Defendant Continental Motors*

The allegations of Paragraphs 109-114 of Count II of the Amended Complaint are not directed to HET and therefore HET provides no answer thereto. Insofar as the allegations are

directed to HET, HET denies the allegations of Paragraphs 109-114 of Count II of the Amended Complaint.

## Count III
### (BREACH OF EXPRESS AND IMPLIED WARRANTIES)
### *Plaintiffs v. Defendant Continental Motors*

The allegations of Paragraphs 115-129 of Count III of the Amended Complaint are not directed to HET and therefore HET provides no answer thereto. Insofar as the allegations are directed to HET, HET denies the allegations of Paragraphs 115-129 of Count III of the Amended Complaint.

## COUNT IV
### (NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS)
### *Plaintiffs HANNAH BOCKER AND SARAH BOCKER v.*
### *Defendant Continental Motors*

The allegations of Paragraphs 130-137 of Count IV of the Amended Complaint are not directed to HET and therefore HET provides no answer thereto. Insofar as the allegations are directed to HET, HET denies the allegations of Paragraphs 130-137 of Count IV of the Amended Complaint.

## COUNT V
### (WRONGFUL DEATH)
### *Plaintiffs v. Continental Motors*

The allegations of Paragraphs 138-142 of Count V of the Amended Complaint are not directed to HET and therefore HET provides no answer thereto. Insofar as the allegations are directed to HET, HET denies the allegations of Paragraphs 138-142 of Count V of the Amended Complaint.

## COUNT VI
### (SURVIVAL ACTION)
### *Plaintiffs v. Continental Motors*

The allegations of Paragraphs 143-145 of Count VI of the Amended Complaint are not directed to HET and therefore HET provides no answer thereto. Insofar as the allegations are directed to HET, HET denies the allegations of Paragraphs 143-145 of Count VI of the Amended Complaint.

**Count VII**
**(STRICT LIABILITY)**
*Plaintiffs v. Defendant Hartzell Engine Technologies*

146.    Plaintiffs incorporate the above paragraphs 1-70 as though set forth at length herein.

**ANSWER:    Defendant HET incorporates its responses to Paragraphs 1-70 as though fully restated herein.**

147.    The Hartzell defendant is in the business of designing, manufacturing, testing, certifying, distributing, selling, supplying and/or providing aircraft engines and component parts, specifically including turbochargers and turbocharging components.

**ANSWER:    Defendant HET admits that it designs, manufactures, markets, supplies and sells certain aircraft engine accessory components, including certain turbocharger components. HET denies that it designed, manufactured, marketed, supplied, or sold the turbochargers and turbocharger components found on the subject aircraft. HET denies the remaining allegations contained in Paragraph 147 of the Amended Complaint.**

148.    Further, this defendant is in the business of designing, inspecting, testing, distributing, selling, supplying, rebuilding, servicing, supporting, marketing turbo charging systems, including turbochargers, waste gates, turbo controllers, check and oil return valves and associated system components and are the parts manufacturer authorization, technical standard order, supplemental type certificate holder, type certificate holder, and/or production certificate holder responsible to ensure the continuing airworthiness of such products.

**ANSWER:    Defendant HET admits that it designs, manufactures, markets, supplies and sells certain aircraft engine accessory components, including certain turbocharger components. HET denies that it designed, manufactured, marketed, supplied, sold, repaired or overhauled the turbochargers and**

**turbocharger components found on the subject aircraft and further denies that it manufactures, supplies or services check and oil return valves. HET denies the remaining allegations contained in Paragraph 148 of the Amended Complaint.**

149.     In fact, defendant Hartzell Engine Technologies is the entity responsible for the accident aircraft's turbochargers and component parts.

**ANSWER:     Defendant HET denies the allegations contained in Paragraph 149 of the Amended Complaint.**

150.     The defendant designed, manufactured, tested, certified, distributed, sold, supplied and/or provided the defective and unreasonably dangerous turbocharging systems in the accident aircraft's engines.

**ANSWER:     Defendant HET denies the allegations contained in Paragraph 150 of the Amended Complaint.**

151.     Defendant Hartzell further had responsibility to provide continuing airworthiness for these components, and are responsible for their ongoing support and safety.

**ANSWER:     Defendant HET lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in Paragraph 151 because the paragraph does not define "these components." Further answering, as to the turbocharger and turbocharging components, HET denies that it has successor liability for those components, which upon information and belief were designed, manufactured, and sold years before HET existed. HET denies any remaining allegations in Paragraph 151 of the Amended Complaint.**

152.     In addition, defendant Hartzell provided instructions for continued airworthiness for the accident aircraft engines and turbocharging systems.

**ANSWER:     Defendant HET denies the allegations contained in Paragraph 152 of the Amended Complaint.**

153.     The dangerous defects which caused this accident existed at the time the accident aircraft's engines and its turbocharging component parts were first sold, in that:

     a.     The defects in the aircraft engines turbocharging systems existed at the time these components were overhauled and/or sold by the defendant;

     b.     The defects existed at the time the defendant distributed these components;

     c.     The defendant failed to warn of these defects; and

     d.     The defendant failed to provide adequate instruction for continued airworthiness and failed to provide engine troubleshooting information describing probable engine and turbocharging malfunctions, how to recognize these malfunctions, and the remedial actions for these malfunctions.

**ANSWER:**    **Defendant HET denies the allegations contained in Paragraph 153 of the Amended Complaint, including all subparagraphs therein.**

154.    The accident turbocharging systems and component parts were in substantially the same condition at the time of the accident as when first sold.

**ANSWER:**    **Defendant HET denies the allegations contained in Paragraph 154 of the Amended Complaint.**

155.    The defects which rendered the aircraft's engines unreasonably dangerous and defective were, but are not limited to, the following:

     a.     Defective and unreasonably dangerous engine turbocharging components;

     b.     Defective and unreasonably dangerous and complex maintenance and inspection instructions;

     c.     Defective and unreasonably dangerous engine performance in the event of a turbocharger malfunction;

     d.     Defective and unreasonably dangerous turbocharging system;

     e.     Inadequate materials used in construction;

f.      Inadequate testing of all engine turbocharging components;

g.      Inadequate instructions to cope with loss of power;

h.      Inadequate design and construction of the engine's turbocharging system to minimize the development of an unsafe condition between overhaul periods;

i.      Defective and inadequate instructions, warnings and information regarding the operation of the aircraft engine and its turbocharging systems, components, accessories, and hardware;

j.      Defective and inadequate warnings concerning failures of the aircraft engine and its systems, components, accessories, and hardware;

k.      Defective instructions for continued airworthiness in that they failed to provide engine troubleshooting information describing probable engine malfunctions, how to recognize those malfunctions, and the remedial action for those malfunctions;

l.      Defective reporting of failures, malfunctions and defects in the engine products, parts, processes or articles that it has manufactured;

m.      Defective design and construction of the engine turbocharging systems, including turbochargers, waste gates, turbo controllers, check and oil return valves and associated system components;

n.      Defective and improper repair and inspection specifications and overhaul information for the engine and turbo charging systems, including turbochargers, waste gates, turbo controllers, check and oil return valves and associated system components;

25

o.  Improper manufacture of the engine and turbocharging systems, including turbochargers, waste gates, turbo controllers, check and oil return valves and associated system components utilized on the accident aircraft;

p.  Defective and improper materials used for the engine turbocharging systems, including turbochargers, bearings, rotating components and associated system components in the accident engine;

q.  Defective and inadequate warnings concerning the failure modes associated with the accident engine and turbocharging systems;

r.  Improper material selection;

s.  Improper quality control;

t.  Improper continuing airworthiness instructions concerning the engine turbocharging systems and associated system components;

u.  Improper size and dimensions of the engine and turbocharging systems, including bearings, shafts, waste gates, turbo controllers, check and oil return valves and associated system components;

v.  Failing to adequately safeguard against malfunctions of the turbocharging system installed on the accident aircraft;

w.  The engine and its turbocharging systems and associated system components were not capable of withstanding the naturally and/or foreseeable occurring engine operational stresses without suffering failure and seizure;

x.  Manufacturing, and selling an turbo charging and normalizing systems, including turbochargers, waste gates, turbo controllers, check and oil return

valves and associated system components which did not withstand normal use; and

    y.    Lack of any measures taken to correct these known defects.

**ANSWER:    Defendant HET denies the allegations contained in Paragraph 155 of the Amended Complaint, including all subparagraphs therein.**

156.    The foregoing defective conditions rendered the engine, its turbocharging systems, including turbo chargers and associated system components dangerous beyond a reasonable consumer's contemplation.

**ANSWER:    Defendant HET denies the allegations contained in Paragraph 156 of the Amended Complaint.**

157.    These dangers inherent in the engine and turbo charging and normalizing systems, including turbochargers, waste gates, turbo controllers, check and oil return valves and associated system components as described above were unknowable to Plaintiffs and unacceptable to the average or ordinary consumer.

**ANSWER:    Defendant HET denies the allegations contained in Paragraph 157 of the Amended Complaint.**

158.    The accident aircraft's turbocharging systems and associated components and accessories, were placed into the stream of commerce when it was originally sold by this defendants [sic] and/or its predecessor(s), as detailed, above.

**ANSWER:    Defendant HET denies the allegations contained in Paragraph 158 of the Amended Complaint.**

159.    At the time of the sale and at all times thereafter, the accident engines and associated turbocharging components were in a defective, unairworthy and unreasonably dangerous condition with manufacturing and/or design defects as aforesaid that were hidden and not obvious to the foreseeable users of the engines.

**ANSWER:** **Defendant HET denies the allegations contained in Paragraph 159 of the Amended Complaint.**

160. The probability of harm to pilots and passengers including, personal injury, death, death by mutilation, and in some instances death by fire, associated with the inherent design and manufacturing defects identified herein and above outweigh the burden or cost of taking precautions or utilizing safer alternatively designed products that would have prevented this accident.

**ANSWER:** **Defendant HET denies the allegations contained in Paragraph 160 of the Amended Complaint.**

161. The aforesaid inherent design and manufacturing defects increased the likelihood of an in-flight engine failure, had no usefulness or desirability in their condition, and could have been rectified with alternative safer products for little to no cost.

**ANSWER:** **Defendant HET denies the allegations contained in Paragraph 161 of the Amended Complaint.**

162. As a result of these defects, the accident aircraft suffered a power loss on takeoff, causing this crash and Plaintiffs' damages, described above. Plaintiffs incorporate paragraphs 70-90 above to this Count VII.

**ANSWER:** **Defendant HET denies the allegations contained in Paragraph 162 of the Amended Complaint.**

### Count VIII
### (NEGLIGENCE)
*Plaintiffs v. Defendant Hartzell Engine Technologies*

163. Plaintiffs incorporate the above paragraphs 1-70 as though set forth at length herein.

**ANSWER:** **Defendant HET incorporates its responses to Paragraphs 1-70 as though fully restated herein.**

164. Defendant Hartzell sells, manufacturers and designers [sic] of products and owed duties to Plaintiffs' decedent to act as reasonably prudent manufacturers, designers, sellers,

overhaulers, and maintainers and distributors of the subject engines turbocharging systems and associated system components, and not to design, manufacturer, or sell defective products.

**ANSWER:** **Defendant HET denies the allegations contained in Paragraph 164.**

165.     In addition to the duties imposed by common law, defendant Hartzell was subject to duties imposed by regulatory law to manufacture products in accordance with mandated engineering data and ones that would not detrimentally affect the airworthiness standards of the aircraft engine and engine components to which they were installed or render an aircraft unairworthy or unsafe.

**ANSWER:** **Defendant HET denies the allegations contained in Paragraph 165, as alleged.**

166.     Defendant breached its duties and was negligent, grossly negligent, careless, and reckless by virtue of the following:

a.     failed to provide properly designed engine turbo charging systems, including turbochargers, waste gates, turbo controllers, check and oil return valves and associated system components;

b.     failed to properly manufacture the engine turbo charging systems, including turbochargers, waste gates, turbo controllers, check and oil return valves and associated system components;

c.     failed to properly provide guidance on setting and maintaining the turbo charging systems, including turbochargers, waste gates, turbo controllers, check and oil return valves and associated system components;

d.     failed to properly design the turbo charging systems, including turbochargers, waste gates, turbo controllers, check and oil return valves

and associated system components to function properly between maintenance periods;

e.     failed to properly construct the engine turbo charging systems, including turbochargers, waste gates, turbo controllers, check and oil return valves and associated system components;

f.     failed to provide adequate instructions, warnings and information concerning the installation, overhaul and replacement of the turbo charging systems, including turbochargers, waste gates, turbo controllers, check and oil return valves and associated system components;

g.     failed to provide adequate instructions, warnings, and information concerning the inspection requirements for the engine, turbo charging systems, including turbochargers, waste gates, turbo controllers, check and oil return valves and associated system components;

h.     failed to utilize a safe and proper design of the engine turbo charging systems, including turbochargers, waste gates, turbo controllers, check and oil return valves and associated system components;

i.     failed to utilize safe and proper manufacturing techniques for the engine turbo charging systems, including turbochargers, waste gates, turbo controllers, check and oil return valves and associated system components;

j.     failed to select appropriate materials for components and replacement parts utilized in the engines and turbo charging systems;

k.     failed to provide proper instructions, warnings, and information concerning the accident engine's turbo charging systems;

l.      failed to provide proper instructions, warnings, and information regarding the use and maintenance of the engine turbo charging systems, waste gates, turbo controllers, check and oil return valves and associated system components;

m.      failed to provide proper instructions, warnings, and information concerning the inspection, troubleshooting, repair, and overhaul requirements for the accident engine turbo charging systems, accessories and associated system components;

n.      failed to provide proper warnings concerning the failure modes associated with the accident engine turbo charging systems, accessories and associated system components;

o.      failed to utilize proper material selection;

p.      failed to utilize proper quality control for the turbocharging system and its replacement parts;

q.      failed to ensure there would not be an improper turbo condition in normal operation;

r.      failed to supply proper continuing airworthiness instructions concerning the engine turbo charging systems, accessories and associated system components;

s.      failed to manufacture the engine, turbocharging system and associated components in accordance with size, materials selection, and dimensions mandated by engineering drawings;

t.     failed to adequately safeguard against malfunctions of the turbo charging system;

u.     failed to correct known defects in the turbo charging systems, accessories and associated system components; and

v.     failed to correct, warn and prevent against other defects which will be shown at trial.

**ANSWER:     Defendant HET denies the allegations contained in Paragraph 166 of the Amended Complaint, including all subparagraphs therein.**

167.     As a direct result of these failures and negligence in design and product support, the accident aircraft lost engine power and impacted the Plaintiffs' residence because Defendant supplied components were unreasonably dangerous, defective and did cause Plaintiffs' injuries.

**ANSWER:     Defendant HET denies the allegations contained in Paragraph 167 of the Amended Complaint.**

168.     Plaintiffs' injuries and damages, including the death of Plaintiffs' decedent, were caused as a direct and proximate result of the foregoing negligent conduct. Plaintiffs incorporate paragraphs 70-90 above to this Count VIII.

**ANSWER:     Defendant HET denies the allegations contained in Paragraph 168 of the Amended Complaint.**

## Count IX
### (BREACH OF EXPRESS AND IMPLIED WARRANTIES)
*Plaintiffs v. Defendant Hartzell Engine Technologies*

169.     Plaintiffs incorporate the above paragraphs 1-70 as though set forth at length herein.

**ANSWER:     Defendant HET incorporates its responses to Paragraphs 1-70 as though fully restated herein.**

170.     Defendant was, and is at all times material hereto, merchants engaged in the business of designing, manufacturing, selling, supplying, supporting, repairing, distributing,

licensing, overhauling, maintaining, and assembling engine accessories specifically including the turbo charging systems on the accident aircraft, including turbochargers, waste gates, turbo controllers, check and oil return valves, accessories and associated system components as well as the associated operation, repair, overhaul, installation and product support materials.

**ANSWER:** **Defendant HET admits that it designs, manufactures, markets, supplies and sells certain aircraft engine accessory components, including certain turbocharger components. HET denies that it designed, manufactured, marketed, supplied, sold, repaired or overhauled the turbochargers and turbocharger components found on the subject aircraft and further denies that it manufactures, supplies or services check and oil return valves. HET denies the remaining allegations contained in Paragraph 170 of the Amended Complaint.**

171. The Hartzell defendant described and advertised goods for sale, including the turbo charging systems, accessories and associated system components installed on the accident aircraft. Such descriptions and advertisements included, but were not limited to, advertising brochures, instructions, manuals, specification sheets, and other product statements [sic]

**ANSWER:** **Defendant HET denies the allegations contained in Paragraph 171 of the Amended Complaint.**

172. These descriptions and affirmations concerning the goods resulted in express warranties that the goods were as described and safe for their intended use, airworthy, and conformed to approved and mandated engineering data.

**ANSWER:** **Defendant HET denies the allegations contained in Paragraph 172 of the Amended Complaint.**

173. In addition, Defendant provided express warranty for the accident turbo charging systems, accessories and associated system components.

**ANSWER:** **Defendant HET denies the allegations contained in Paragraph 173 of the Amended Complaint.**

174.     These descriptions, representations, and affirmations resulted in oral and written express and implied warranties with regard the aforementioned components in the accident aircraft engines and turbocharging components.

**ANSWER:     Defendant HET denies the allegations contained in Paragraph 174 of the Amended Complaint.**

175.     Defendant expressly and impliedly warranted that the accident aircraft's engine and turbo charging system, including turbochargers, accessories and associated components would operate safely with these components and conformed to required engineering specifications and data.

**ANSWER:     Defendant HET denies the allegations contained in Paragraph 175 of the Amended Complaint.**

176.     These descriptions, affirmations, and express warranties became part of the bases of the bargain of their sales and said warranties ran to Plaintiffs' and their decedent as intended third party beneficiaries from the use of the product.

**ANSWER:     Defendant HET denies the allegations contained in Paragraph 176 of the Amended Complaint.**

177.     Plaintiffs and Plaintiffs' decedent further relied upon these warranties.

**ANSWER:     Defendant HET denies the allegations contained in Paragraph 177 of the Amended Complaint.**

178.     As a result of the sales activities of defendant Hartzell, it expressly and impliedly warranted that its goods were merchantable, airworthy, fit for their ordinary purpose, conformed to design data, properly labeled and packaged for sale and installation, and conformed to the promises and affirmations of fact made on their containers and labels. These implied and express warranties ran from Defendant to Plaintiffs and their decedent as intended beneficiaries.

**ANSWER:     Defendant HET denies the allegations contained in Paragraph 178 of the Amended Complaint.**

179. As a result of the sales activities of defendant Hartzell, it impliedly warranted that its goods were fit for their particular purpose and suitable for the accident engine, and it knew that its skill and judgment would be relied upon and were, in fact, relied upon by the purchaser of their individual goods.

**ANSWER:** **Defendant HET denies the allegations contained in Paragraph 179 of the Amended Complaint.**

180. Because defendant Hartzell was a merchant as to its goods offered for sale, there arises as a result of the "course of dealings" and "usage of trade" an implied warranty that each of its individual goods are safe and conform to design data.

**ANSWER:** **Defendant HET denies the allegations contained in Paragraph 180 of the Amended Complaint.**

181. By selling defective goods, defendant Hartzell breached the express warranties and the implied warranties of merchantability and fitness for particular purpose and the implied warranties arising from the course of dealings and usage of trade.

**ANSWER:** **Defendant HET denies the allegations contained in Paragraph 181 of the Amended Complaint.**

182. The breaches of warranties included the fact that defendant Hartzell did the following:

      a.     defective design, manufacture and construction of the engine turbo charging systems, including turbochargers and associated system components, as well as engine accessories;

      b.     defective and inadequate instructions, warnings and information concerning the engines turbo charging systems, including turbochargers and associated system components, as well as engine accessories;

c.     defective and inadequate instructions, warnings, and information concerning the inspection requirements and replacement requirements for the engine turbo charging systems, including turbochargers and associated system components, as well as engine accessories;

d.     improper material selection of the engine turbo charging systems, including turbochargers and associated system components, as well as engine accessories;

e.     improper quality control for the engines, fuel delivery system, turbo charging systems, including turbochargers and associated system components, as well as engine accessories;

f.     improper continuing airworthiness instructions concerning the turbo charging systems, including turbochargers and associated system components, as well as engine accessories;

g.     the engine components, particularly the turbo charging systems and fuel delivery systems were not able to endure normal operating conditions without failure;

h.     the turbo system and components did not have adequate safeguards against failure;

i.     non-conformance of the engines, fuel delivery system, turbo charging systems, including turbochargers and associated system components, as well as engine accessories; and

j.     lack of any measures taken to correct these known defects.

**ANSWER:     Defendant HET denies the allegations contained in Paragraph 182 of the Amended Complaint, including all subparagraphs therein.**

183. As a direct result of these breaches of warranties, failures, non-conformance, and design defects, the accident aircraft suffered an engine's turbo system failed and caused a power loss and was unreasonably dangerous, defective and did cause Plaintiffs' injuries and damages, and the death of Plaintiffs' decedent. Plaintiffs incorporate paragraphs 70-90 above to this Count IX.

**ANSWER:** **Defendant HET denies the allegations contained in Paragraph 183 of the Amended Complaint.**

**COUNT X**
**(NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS)**
*Plaintiffs HANNAH BOCKER AND SARAH BOCKER v. Defendant Hartzell Engine Technologies*

184. Plaintiffs incorporate the above paragraphs 1-90 as though set forth at length herein.

**ANSWER:** **Defendant HET incorporates its responses to Paragraphs 1-90 as though fully restated herein.**

185. Defendant Hartzell owed a duty to Plaintiffs, as described above in Count VIII.

**ANSWER:** **Defendant HET denies the allegations contained in Paragraph 185.**

186. Defendant's breach of duty proximately caused the accident and was a proximate cause of the emotional distress that naturally resulted to Plaintiffs as a result of Defendant's actions.

**ANSWER:** **Defendant HET denies the allegations contained in Paragraph 186 of the Amended Complaint.**

187. The Plaintiffs were inside the residence which the accident aircraft impacted when it crashed and therefore experienced and observed the accident sequence and ensuing fire, and were within the zone of danger of the accident, and witnessed the injury to and eventual death of their father, GERARD BOCKER.

**ANSWER:** **Defendant HET lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in Paragraph 187 of the Amended Complaint.**

188.     The impact and ensuing fire left no doubt in Plaintiffs' mind that they would be injured or worse, perish in the conflagration.

**ANSWER:** **Defendant HET lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in Paragraph 188 of the Amended Complaint.**

189.     After the aircraft impacted the house, Plaintiffs had to wait for emergency personnel to locate and rescue them – all the while they were suffering the injuries explained above.

**ANSWER:** **Defendant HET lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in Paragraph 189 of the Amended Complaint.**

190.     As a direct and proximate result of Defendant's negligence and/or defective products, Plaintiffs suffered and continue to suffer emotional and physical injuries which were a direct result of the accident and were foreseeable to Defendant.

**ANSWER:** **Defendant HET denies the allegations contained in Paragraph 190 of the Amended Complaint.**

191.     Plaintiffs suffered the aforementioned injuries and damages as a direct result from the sensory and contemporaneous observance of the accident and fear of the impending death by mutilation and serious bodily injury. Plaintiffs incorporate paragraphs 70-90 above to this Count X.

**ANSWER:** **Defendant HET lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in Paragraph 191 of the Amended Complaint, but denies that any of the damages alleged therein are attributable to HET.**

## COUNT XI
## (WRONGFUL DEATH)
### *Plaintiffs v. Hartzell Engine Technologies*

192. Plaintiffs incorporate the above paragraphs 1-90 as though set forth at length herein.

**ANSWER:** **Defendant HET incorporates its responses to Paragraphs 1-90 as though fully restated herein.**

193. Plaintiffs bring this Count pursuant to Delaware's Wrongful Death Statute 10 Del. C. § 3721, et seq. to recover an amount that will fairly compensate them for the injury resulting from the death of Plaintiffs' Decedent. To the extent Delaware law does not apply, Plaintiffs bring wrongful death claims and seek wrongful death damages to fullest extent permitted by the law deemed to apply to this case.

**ANSWER:** **Delaware's Wrongful Death Statute 10 Del. C. § 3721, et seq. speaks for itself. To the extent that Paragraph 193 requires an answer, Defendant HET denies the allegations contained in Paragraph 193 of the Amended Complaint.**

194. Plaintiffs bring this claim on behalf of themselves and all person entitled to recover damages for the wrongful death of the Decedent pursuant to 10 Del. C. § 3724 or any other applicable law.

**ANSWER:** **Delaware Statute 10 Del. C. § 3724 speaks for itself. To the extent that Paragraph 194 requires an answer, Defendant HET denies the allegations contained in Paragraph 194 of the Amended Complaint.**

195. As a result of the death of Decedent, Plaintiffs and others entitled to recovery under 10 Del. C. § 3724 or any other applicable law were, *inter alia*, deprived of the expectation of pecuniary benefits that would have resulted from Decedent's life, suffered mental anguish, mental pain and suffering, loss of contribution for support, loss of household services, loss of society, loss of consortium, companionship, comfort, protection, attention, advice, counsel and guidance, which will persist for the rest of their lives.

**ANSWER:** **Delaware Statute 10 Del. C. § 3724 speaks for itself. To the extent that Paragraph 195 requires an answer, Defendant HET denies the allegations contained in Paragraph 195 of the Amended Complaint.**

196.     As a direct and proximate result of the aforesaid negligence of defendant Hartzell, Plaintiffs have incurred funeral expenses in connection with the death of Decedent.

**ANSWER:     Defendant HET denies the allegations contained in Paragraph 196 of the Amended Complaint.**

## COUNT XII
## (SURVIVAL ACTION)
### *Plaintiffs v. Hartzell Engine Technologies*

197.     Plaintiffs incorporate the above paragraphs 1-90 as though set forth at length herein.

**ANSWER:     Defendant HET incorporates its responses to Paragraphs 1-90 as though fully restated herein.**

198.     Plaintiffs bring this Count pursuant to Delaware Survival Statute 10 Del. C. § 3701, *et seq.*

**ANSWER:     Delaware Statute 10 Del. C. § 3701 speaks for itself. To the extent that Paragraph 198 requires an answer, Defendant HET denies the allegations contained in Paragraph 198 of the Amended Complaint.**

199.     By reason of the negligence of defendant Hartzell, which resulted in the injuries to Decedent, Plaintiffs claim damages for the physical and emotional suffering endured by the Decedent prior to his death. To the extent Delaware law does not apply, Plaintiffs bring survival claims and seek survival damages to fullest extent permitted by the law deemed to apply to this case.

**ANSWER:     Defendant HET denies the allegations contained in Paragraph 199 of the Amended Complaint.**

## AFFIRMATIVE DEFENSES

NOW COMES Defendant HARTZELL ENGINE TECHNOLOGIES LLC ("HET"), and pleading in the alternative asserts the following Affirmative Defenses to Plaintiffs' Amended Complaint.

## FIRST DEFENSE

The Amended Complaint fails to state a cause of action against HET upon which relief can be granted. Among other defects, it fails to plead a plausible case for Plaintiffs' corporate successor liability theory (i.e. Plaintiffs have not alleged sufficient facts to support the necessary elements for exceptions to the general rule of Delaware law that corporate successors are not liable for the alleged tortious conduct of alleged predecessors) or Plaintiffs' PMA or certificate holder liability theory (i.e. Plaintiffs have not articulated whether or which Federal Aviation Regulations and Orders impose the duties that Plaintiffs' claim HET breached).

## SECOND DEFENSE

HET pleads all applicable statutes of limitation and statutes of repose under state and/or federal law.

## THIRD DEFENSE

The FAA provides a comprehensive regulatory scheme for air safety, including the certification of aircraft and products incorporated into the design of aircraft built and/or flown in the United States. Plaintiffs' claims against HET are expressly and/or impliedly preempted in whole or in part by federal law, including, but not limited to, the Federal Aviation Act of 1958, P.L. 85-726, 72 Stat. 731, formerly codified as 49 U.S.C. 1301, et seq., now recodified and incorporated into 49 U.S.C. 40401, et seq. ("the FA Act"), and the applicable federal common law.

## FOURTH DEFENSE

The incident referred to in the Amended Complaint and all of the injuries and claims alleged therein were the result of intervening or superseding acts, omissions, events, factors, occurrences or conditions, which were in no way caused by HET and for which HET is not liable.

## FIFTH DEFENSE

The incident referred to in the Amended Complaint and all of the injuries and claims alleged therein were the result of acts or omissions of persons or entities other than HET, including but not limited to pilot Francisco Knipping-Diaz (deceased), over whom HET did and does not have legal responsibility or control, whether or not such persons or entities are parties to this litigation and, as a result, any recovery against HET is barred or must be reduced in proportion to the percentage of fault attributable to said persons or entities under the principles of comparative fault.

## SIXTH DEFENSE

The sole proximate cause of the incident giving rise to this lawsuit was the negligent or tortious acts and/or omissions of persons or entities other than HET, including but not limited to pilot Francisco Knipping-Diaz (deceased) and the owner(s)/operator(s) of the aircraft, over whom HET does not have legal responsibility or control, whether or not such persons or entities are parties to this litigation and, as a result, any recovery against HET is barred.

## SEVENTH DEFENSE

The Plaintiffs have failed to join indispensable parties.

## EIGHTH DEFENSE

Plaintiffs' claims are barred, in whole or in part, because HET did not design, manufacture, modify, maintain, assemble and/or install the turbocharger products at issue, and HET denies that it is liable under any claim of negligence, strict product liability or other theory, or as successor in interest.

## NINTH DEFENSE

The turbochargers at issue were not in the same condition on August 17, 2019 as originally sold by the manufacturer and/or had been modified or altered by others.

## TENTH DEFENSE

Some or all of the causes of action and damages, if any, claimed by the Plaintiffs are limited and/or barred under the laws of Delaware or other applicable states' laws, including that state's product liability statutes and/or common law applicable to product-related actions.

## ELEVENTH DEFENSE

HET at all times was compliant with applicable federal laws and the Federal Aviation Regulations, and denies that any actions on its part, or on the part of its employees, constituted any negligence as may be alleged in the Amended Complaint, and demands strict proof thereof, including strict proof as to the nature and extent of any damages alleged by Plaintiffs.

## TWELFTH DEFENSE

Any claim asserted or based on a breach of warranty is precluded because Plaintiffs and/or Plaintiffs' decedent were not in privity with any entity issuing a related warranty, if any.

## THIRTEENTH DEFENSE

Plaintiffs' claims may be barred, in whole or in part, because the Plaintiffs have already received accord, compensation and/or full satisfaction for their alleged injuries and damages from other parties or third-parties. In the alternative, HET is entitled to a set-off, should any damages be awarded against it, in the amount(s) of any settlement(s) paid to Plaintiffs, or to any entity acting either on its own or on behalf of Plaintiffs, by a third party and/or tortfeasor with respect to the same alleged injuries.

## FOURTEENTH DEFENSE

HET intends to rely upon, and reserves its right to assert, and hereby pleads such other and related defenses as may become available in the event of a determination that the action or some part thereof is governed by the substantive law of a state other than Delaware.

## FIFTEENTH DEFENSE

HET reserves the right to add such other defenses, counterclaims, cross-claims or third-party claims by way of supplemental or amended pleadings as may be determined or discovered during these proceedings.

## SIXTEENTH DEFENSE

HET would show that any award of punitive damages in this case is unconstitutional to the extent that it would infringe upon HET's due process and equal protection rights as set forth in the Fifth and Fourteenth Amendments of the United States Constitution and HET's right to be free from cruel and unusual punishment as set forth in the Eighth Amendment to the United States Constitution. Furthermore, no act or omission by HET was intentional, fraudulent, malicious, or reckless conduct, which must be shown by clear and convincing evidence and, therefore, any award of punitive damages is barred.

## SEVENTEENTH DEFENSE

HET reserves the right to seek bifurcation of all liability trial proceedings from punitive damages proceedings.

## EIGHTEENTH DEFENSE

To the extent that Plaintiffs have failed to mitigate their damages, they are barred from recovery.

WHEREFORE, Hartzell Engine Technologies LLC (HET) prays that this Honorable Court (1) dismiss Plaintiffs' Amended Complaint with prejudice as to HET, (2) enter judgment in favor of HET and against Plaintiffs, (3) for an award of attorney's fees and costs to HET under applicable principle of law or equity, and (4) for such other relief as this Court deems just and proper.

Respectfully submitted,

**MARGOLIS EDELSTEIN**

*/s/ Krista M. Reale*

KRISTA M. REALE (DE Id. #4748)
300 Delaware Avenue
Suite 800
Wilmington, DE 19801
(302) 404-4785
Attorney for Defendant
HARTZELL ENGINE
TECHNOLOGIES LLC;

DATE: December 28, 2021