## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| HANNAH BOCKER, SARAH BOCKER and BARBARA BOCKER as Administrator of the Estate of GERARD BOCKER and BARBARA BOCKER, Individually | : : : : : | |
| Plaintiffs, | : : | C.A. NO. 21-cv-1174-MN-CJB |
| v. | : : : | |
| HARTZELL ENGINE TECHNOLOGIES LLC AND CONTINENTAL AEROSPACE TECHNOLOGIES, INC. f/k/a CONTINENTAL MOTORS, INC. | : : : : : : | JURY TRIAL DEMANDED |
| Defendants. | :: | |

### PLAINTIFFS' RESPONSE TO CONTINENTAL AEROSPACE TECHNOLOGIES, INC. f/k/a CONTINENTAL MOTORS, INC.'S MOTION TO STRIKE AND DISMISS FOR FAILURE TO STATE A CLAIM AND/OR STAY OF PROCEEDINGS (D.I. 50)

Dated: September 6, 2022

Brian E. Farnan (Bar No. 4089)
Michael J. Farnan (Bar No. 5165)
FARNAN LLP
919 N. Market Street, 12th Floor
Wilmington, DE 19801
Telephone: (302) 777-0300
Fax: (302) 777-0301
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

Michael S. Miska (admitted *pro hac vice*)
The Wolk Law Firm
1710-12 Locust Street
Philadelphia, PA 19103
Telephone: (215) 545-4220
Fax: (215) 545-5252
mmiska@airlaw.com

*Attorneys for Plaintiffs*

**TABLE OF CONTENTS**

I.   NATURE OF CASE AND STAGE OF PROCEEDINGS ....................................................... 1

II.  OPERATIVE FACTS ................................................................................................................ 2

    A.   Factual Background ........................................................................................................ 2

    B.   Background of the Accident ........................................................................................... 2

    C.   The SAC Sufficiently Sets Forth Continental's Liability ................................................ 4

II.  ARGUMENT ............................................................................................................................. 6

    A.   Legal Standard on Motion to Dismiss ............................................................................ 7

    B.   Plaintiffs Agree with Continental that this Savings Action Should be Stayed ................ 9

    C.   Under the Doctrine of *Colorado River* Abstention, Continental's Motion should be Denied ............................................................................................................................. 9

    D.   Plaintiffs' SAC Names the Appropriate Parties ............................................................ 11

    E.   Plaintiffs' Claims for Strict Liability and Breach of Warranty are Properly Brought ... 11

    F.   Leave to Amend Should be Granted if this Court is Inclined to Grant Continental's Motion ........................................................................................................................... 12

III. CONCLUSION ........................................................................................................................ 12

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adger v. Governor John Carney*,
  No. CV 18-2048-LPS, 2021 WL 1198723 (D. Del. Mar. 30, 2021) ....................................... 12

*Angelastro v. Prudential–Bache Sec., Inc.*,
  764 F.2d 939 (3d Cir.1985).................................................................................................... 7

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)................................................................................................................ 8

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007)................................................................................................................ 7

*Coene v. 3M Co.*,
  No. 10–cv–6546–CJS, 2011 WL 3555788 (W.D.N.Y. Aug. 11, 2011) ..................................... 8

*Coleman v. Boston Scientific Corp.,* No. 1:10–cv–01968–OWN–SKO, 2011 WL 1523477, at *2–
  5 (E.D. Cal. Apr. 20, 2011).................................................................................................... 8

*Colorado River Water Conservation District v. United States,*
  424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976)......................................................... 9, 10

*Dole v. Arco,*
  921 F.2d 484 (3d Cir. 1990).................................................................................................. 12

*DuRocher v. Riddell, Inc.*,
  97 F. Supp. 3d 1006 (S.D. Ind. 2015).................................................................................... 8

*Foman v. Davis,*
  371 U.S. 178 (1962).............................................................................................................. 12

*Ford Motor Co. v. Bandemer*,
  140 S. Ct. 916 (2020)............................................................................................................ 10

*Gordon v. E. Goshen Twp.*,
  592 F. Supp. 2d 828 (E.D. Pa. 2009) ..................................................................................... 9

*Hemme v. Airbus, S.A.S.,* No. 09 C,
  7239, 2010 WL 1416468 (N.D. Ill. Apr. 1, 2010) ................................................................... 8

*Hicks v. Arthur,*
  843 F. Supp. 949 (E.D. Pa. 1994) ................................................................................... 7

*IFC Interconsult, AG v. Safeguard Int'l Partners, LLC,*
  438 F.3d 298 (3d Cir.2006) ........................................................................................... 10

*In re Burlington Coat Factory Secs. Litig.,*
  114 F.3d 1410 (3d Cir. 1997) ........................................................................................ 12

*In re DeLorean Motor Co.,*
  991 F.2d 1236 (6th Cir. 1993) ........................................................................................ 7

*Ingersoll–Rand Fin. Corp. v. Callison,*
  844 F.2d 133 (3d Cir.1988) ........................................................................................... 10

*Jordan v. Fox, Rothschild, O'Brien & Frankel,*
  20 F.3d 1250 (3d Cir.1994) ............................................................................................. 7

*Koken v. GPC Int'l, Inc.,*
  443 F.Supp.2d 631 (D. Del. 2006) ................................................................................ 12

*McMurray v. De Vink,*
  27 Fed.Appx. 88 (3d Cir.2002) ..................................................................................... 10

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,*
  460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983) ................................................... 9, 10

*Ryan v. Johnson,*
  115 F.3d 193 (3d Cir.1997) ........................................................................................... 10

*Rycoline Prods., Inc. v. C & W Unlimited,*
  109 F.3d 883 (3d Cir. 1997) .......................................................................................... 10

*Smith v. Pepco Holdings, Inc.,*
  No. CIV.A.N09C-02-099CLS, 2011 WL 2178628 (Del. Super. Ct. May 25, 2011) ................. 9

*Winslow v. W.L. Gore & Assoc., Inc.,*
  No. Civ. A 10–116, 2011 WL 866184 (W.D. La. Jan. 21, 2011) ................................... 8

*Wolfington v. Reconstructive Orthopaedic Assocs. II PC,*
  935 F.3d 187 (3d Cir. 2019) ............................................................................................ 7

**Rules**
Fed. R. Civ. P. 8(a)(2) ............................................................................................................ 7
Fed. R. Civ. P. 12(b)(6) .......................................................................................................... 7
Fed. R.Civ. P. 15(a)(2) ......................................................................................................... 12

I. **NATURE OF CASE AND STAGE OF PROCEEDINGS**

Plaintiffs Hannah Bocker, Sarah Bocker, and Barbara Bocker Individually and as Administrator of the Estate of Gerard Bocker, by and through the undersigned counsel, respectfully submit this response in opposition to Defendant Continental Aerospace Technologies, Inc. f/k/a Continental Motors, Inc.'s ("Continental") Motion to Strike and Dismiss Plaintiffs' Second Amended Complaint. (D.I. 51).

In accordance with this Court's Report and Recommendation issued on June 23, 2022, Plaintiffs filed their Second Amended Complaint ("SAC") to specifically set forth the duties held by Continental itself (apart from Hartzell Engine Technologies LLC ("Hartzell")), and how Continental breached its duties, as the party responsible for the engine (including the exhaust system components), which caused the subject accident and Plaintiffs' damages. (D.I. 48 at ¶¶19, 37-44, 49-50, 81-89, 133). Plaintiffs' SAC cures the matters addressed in the Report and Recommendations and satisfies the federal fact-based pleading requirements. Defendant's motion to strike and/or dismiss Plaintiffs' claims against Continental should be denied.

Plaintiffs do not oppose Continental's request to stay this savings action pending resolution of Continental's personal jurisdictional challenge in the related New York action[1], which is fully briefed and has been determined in Plaintiffs' favor, but is now the subject of a petition for appeal by Continental. Again, Plaintiffs' position here is that a stay of this action will conserve this Court's resources and allow the New York Court the ability to adjudicate Continental's appeal. It will not prejudice any party, as co-defendant Hartzell was also named in the New York action and has similarly moved to dismiss the New York claims on personal jurisdiction grounds, and that

---

[1] *Bocker et. al v. Knipping-Diaz, et al*, No. 53513/2019 (N.Y. Supreme Ct. Dutchess).

motion is also briefed and ready for determination, which will occur after the appeal by Continental.

## II.   OPERATIVE FACTS

### A.   Factual Background

This matter arises from the August 17, 2019 crash of a Cessna T303 aircraft, bearing registration number N303TL, in Lagrangeville, New York.  (SAC at ¶17), pictured below:



(SAC at ¶34).  This aircraft is equipped with twin-piston turbocharged Continental (L)TSIO-520-AE3B engines, manufactured by Continental Motors. (SAC at ¶¶18, 36).

As discussed in further detail below, Continental was the type certificate holder and production certificate holder for the accident engine assemblies, and specified the particular turbocharger components as part of the Continental (L)TSIO-520-AE3B model engines' Type Design, and therefore bears legal responsibility for the engine, including the turbocharging system. (SAC at ¶19, 37-46, 49-50).

### B.   Background of the Accident

The aircraft was piloted by Francisco Knipping-Diaz, who sustained fatal injuries in the crash.  (SAC at ¶20).  Also on board were Teofilo Antonio Diaz and Eduardo Tio as passengers, who survived the crash.  (SAC at ¶21).  The accident aircraft had landed at Sky Acres Airport

(44N) in Lagrangeville, New York, where it received fuel before takeoff, following a business meeting at Orange County Airport (MGJ) in Montgomery, New York. (SAC at ¶22). After receiving fuel, the pilot started the engines of the accident aircraft, and departed Sky Acres Airport in day visual meteorological conditions, with a destination of Republic Airport (KFRG) in Farmingdale, New York. (SAC at ¶23). The pilot then departed the airport on Runway 17 at Sky Acres. (SAC at ¶24). Shortly after takeoff the aircraft lost engine power at a low altitude and was unable to climb. (SAC at ¶25). The aircraft began to drift left, and the pilot attempted to straighten its course, continuing over the end of the runway and approached obstacles. (SAC at ¶26). Ultimately the plane was unable to climb due to the power loss, rolled left and impacted the Bocker residence, trees and the ground. (SAC at ¶27).

Inside the Bocker residence was Hannah Bocker, her father Gerard Bocker, and sister Sarah Bocker. (SAC at ¶28). The aircraft almost immediately burst into flames as did the Bocker's house. (SAC at ¶29). In fact, Hannah and her father, Gerard Bocker, were inside, and witnessed the conflagration which ensued. (SAC at ¶30). Sadly, Gerard Bocker was consumed by the fire and perished. (SAC at ¶31). Hannah Bocker was severely burned all over her body due to the fire. (SAC at ¶32). Sarah Bocker was able to jump out of a window of the house, suffering injuries and witnessing the horrors which befell her family. (SAC at ¶33).

Post-crash examination confirmed the witness statements that the aircraft suffered a loss of power, resulting in its failure to climb, and inability for the pilot to maintain directional control. (SAC at ¶62). This loss of power occurred unexpectedly, just after the aircraft took off from the airport. (SAC at ¶63). The pilot of the aircraft, Francisco Knipping-Diaz, was not able to climb in the aircraft following this power loss. (SAC at ¶64). As such, the pilot made a forced landing on the Bocker residence, and the aircraft and the house immediately caught fire. (SAC at ¶65).

Plaintiffs Hannah Bocker, Sarah Bocker and their father, Gerard Bocker, deceased, were inside the residence at the time. (SAC at ¶66). Post-crash investigation of the accident aircraft confirm that it was not capable of making sufficient power to remain airborne. (SAC at ¶67). If the fuel system of the aircraft does not provide sufficient fuel, and fuel free of contaminants, the engines are unable to make rated power. (SAC at ¶68). Further, investigation reveals that the aircraft's turbocharger wastegates were in vastly different positions, with the left wastegate nearly closed, confirming that the engine was demanding additional boost in reaction to a malfunction of the engine. (SAC at ¶69). In fact, in the event of a turbocharger seizure or induction blockage, the wastegate on an engine will attempt to raise the manifold pressure, just as was found post-accident on the subject left engine. (SAC at ¶70). If the fuel/air mixture provided to the engine is not appropriate, it will further be unable to make rated power. (SAC at ¶71). Furthermore, the signatures in the propellers and control levers confirm that the aircraft was not making rated power on takeoff. (SAC at ¶72). Additionally, passenger and witness statements confirm the fact the accident aircraft suffered a powerplant failure and was unable to perform as a result. (SAC at ¶73).

### C. The SAC Sufficiently Sets Forth Continental's Liability

Plaintiffs' SAC sufficiently alleges how Continental is responsible for the engine, including the turbocharger system that Continental specified during certification to be used in the (L)TSIO-520-AE3B engines. This aircraft is equipped with two Continental (L)TSIO-520-AE3B piston engines each rated at 250HP, which were counter-rotating and turbocharged. (SAC at ¶36). By its very nature, the Continental type design specifies the type of turbocharging system to be used, as well as its fuel delivery and ignition systems. Ultimately, Continental sits at the top of the 'aviation food chain' with respect to the design and function (or malfunction) of the accident engines.

As the type certificate holder, production certificate holder, and engine designer and manufacturer, Continental had a duty to ensure they were not defective and operated properly within overhaul intervals. (SAC at ¶37). As the party responsible for the engines and their accessories, Continental is responsible under regulatory and state common law to ensure that the engines function properly during their entire operating range through their useful life and that the fuel delivery and induction systems do not cause a sudden and unexpected loss of power. (SAC at ¶38).

Continental also had a duty to provide instructions for continuing airworthiness for the engines and accessories, including the turbo charging and induction systems and failed to provide adequate guidance. (SAC at ¶39). Continental also had a duty to monitor failures in the field by way of other accidents, incidents, service difficulty reports, warranty claims, and other notice it receives from operators, manufacturers, and those in the field. (SAC at ¶40).

Continental had a duty to ensure the design of the engine assemblies – to include the induction and fuel delivery systems – did not contain dangerous defects which would cause them to lose power and cause serious injuries or death. (SAC at ¶41). Continental was on notice of other failures of its engine assemblies and accessories through failures in the field by way of other accidents, incidents, service difficulty reports, warranty claims, and other notice it receives from operators, maintainers, and those in the field. (SAC at ¶42).

The duties held by Continental included to ensure that the turbochargers and associated components were not defective or unairworthy. (SAC at ¶43). In addition, Continental had the ultimate responsibility to ensure that the accident engines were not defective, and did not develop dangerous conditions between overhaul intervals which would impede their functionality. (SAC at ¶44).

The purpose of turbocharging an engine is to increase its performance at higher altitudes, as the air thins and becomes less dense, so that the fuel/air mixture can remain at or close to that at sea-level. (SAC at ¶45). In the event that a turbocharger malfunctions or seizes, the engine will not receive an appropriate fuel/air mixture and cause a loss of power. (SAC at ¶46).

These turbochargers, while made by defendant Hartzell and its predecessors were specified and procured by defendant Continental. (SAC at ¶49). As such, the flaws in the accident engines, the induction and fuel delivery system which caused the power loss just after takeoff in the accident aircraft, were the ultimate responsibility of defendant Continental. (SAC at ¶50). It is critical that the engines perform on takeoff, and if they do not, a pilot is faced with a dangerous and immediate emergency situation. (SAC at ¶59)

In normal operation, T303 Crusaders have a history of engine power losses due to fuel delivery malfunctions, and malfunctions of turbochargers. (SAC at ¶60). In the event of a turbocharger malfunction, a power loss is imminent, which is particularly dangerous on takeoff. (SAC at ¶61). As a result of these defects, the subject accident occurred killing Gerard Bocker and injuring Hannah and Sarah Bocker.

## II.     ARGUMENT

Plaintiffs' SAC, cited above, articulates claims against Defendant Continental which survive Continental's Motion to strike/dismiss, and Defendant's Motion should be denied. Plaintiffs' SAC specifies the responsibilities, and breaches thereof, Continental committed in relation to its role as Type Certificate Holder and Production Certificate Holder, responsible for the engine, and the engine accessories. Importantly, Defendant does not deny its responsibilities with respect to the engine as a whole and the parts that are included on its Type Design. The averments Continental seeks to strike are wholly relevant to Plaintiffs' claims, particularly under

the pleading standard which views the pleadings in the light most favorable to Plaintiffs. As to Defendant's alternative grounds for relief, which is for a stay pending resolution of its jurisdictional challenge in the primary New York action, Plaintiffs have no objection, but respectfully submit that the entirety of this matter should be stayed for the benefit of judicial economy and in order to avoid duplicative discovery efforts.

### A.    Legal Standard on Motion to Dismiss

In deciding a Motion to Dismiss under Rule 12(b)(6), the Court may look only to the facts alleged in the complaint and attachments. *Jordan v. Fox, Rothschild, O'Brien & Frankel,* 20 F.3d 1250, 1261 (3d Cir.1994). The Court must accept as true all well-pleaded allegations in the complaint and view them in the light most favorable to the plaintiff. *Angelastro v. Prudential–Bache Sec., Inc.,* 764 F.2d 939, 944 (3d Cir.1985). A valid complaint requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

"A judge may not grant a Fed. R. C. P. 12(b)(6) motion to dismiss based on a disbelief of a complaint's factual allegations." *In re DeLorean Motor Co.*, 991 F.2d 1236, 1240 (6th Cir. 1993). At the pleading stage, Plaintiffs are merely required to set forth sufficient facts to raise a reasonable expectation that discovery will reveal evidence to support their claims. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). The complaint must establish a *prima facie* case - not prove it. *Hicks v. Arthur,* 843 F. Supp. 949, 959 (E.D. Pa. 1994).

Under well-established precedential case law, "a motion to dismiss may be decided based only on the 'complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents.'" *Wolfington v. Reconstructive Orthopaedic Assocs. II PC*, 935 F.3d 187, 197 (3d Cir. 2019). Furthermore, "[w]hen there are well-ple[d] factual allegations, a court should assume their veracity

and then determine whether they plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal,* 556 U.S. 662 (2009). Such a determination is a context-specific task requiring the court "to draw on its judicial experience and common sense." *Id.*

As detailed herein, in the current SAC, Plaintiffs separated the counts against Hartzell and Continental, in response to Hartzell's argument that the Amended Complaint was a shotgun pleading, and subsequently Hartzell answered. (See D.I. 48).

In the context of products liability, federal courts have recognized that the pleading requirement in products liability cases is minimal. *Coene v. 3M Co.,* No. 10–cv–6546–CJS, 2011 WL 3555788, at *3 (W.D.N.Y. Aug. 11, 2011); *Coleman v. Boston Scientific Corp.,* No. 1:10–cv–01968–OWN–SKO, 2011 WL 1523477, at *2–5 (E.D. Cal. Apr. 20, 2011); *Winslow v. W.L. Gore & Assoc., Inc.,* No. Civ. A 10–116, 2011 WL 866184, at *2 (W.D. La. Jan. 21, 2011); *Hemme v. Airbus, S.A.S.,* No. 09 C 7239, 2010 WL 1416468, at *3 (N.D .Ill. Apr. 1, 2010); *DuRocher v. Riddell, Inc.*, 97 F. Supp. 3d 1006, 1019–20 (S.D. Ind. 2015).  The *DuRocher* court recognized:

> this is a products liability case where almost all of the evidence is in the possession of defendant or other entities. Proof will necessarily be technical in nature and it is likely impossible for plaintiff to state more specific allegations regarding defects in manufacture and design without first having the benefit of discovery and of expert analysis, neither of which is required in order to file suit.

97 F. Supp. 3d at 1019-20.

There is no doubt, even on the face of Plaintiffs' SAC, that Continental is the entity who is the type certificate holder and responsible for the airworthiness of the engines. (See SAC at ¶¶81-89).  Continental has a duty to ensure the safety and airworthiness of the engines, which was breached when they failed just after takeoff, as confirmed by the parties' investigation and plead in Plaintiffs' SAC.  This is a complex products case, involving a power loss on takeoff, where the parties do not have the benefit of hearing the pilot's statement, as he perished in the crash.  The investigation is ongoing, however there is ample notice to Continental about the nature of the

power loss, the condition of the turbochargers and the cause of this accident. Moreover, it is abundantly clear how this engine power loss caused Plaintiffs' damages and injuries herein. Continental's motion should be denied.

### B. Plaintiffs Agree with Continental that this Savings Action Should be Stayed

A stay of this action is appropriate to avoid wasteful duplication of resources and to avoid inconsistent rulings. When two actions are filed in separate jurisdictions involving the same parties and the same issues, the Court may exercise its discretion and stay the current action pending the outcome of the other action. The grant of a stay is appropriate when the other court is capable of providing prompt and complete justice. A stay will prevent wasteful duplication of resources and expense, as well as the possibility of conflicting and inconsistent rulings. *Smith v. Pepco Holdings, Inc.*, No. CIV.A.N09C-02-099CLS, 2011 WL 2178628, at *2 (Del. Super. Ct. May 25, 2011).

In the event Continental is not successful in its motion to dismiss in New York, that Court is capable of hearing the controversy, particularly because of the number of parties in the two suits pending there. It is in the interest of judicial economy to stay this matter pending those motions' disposition.

### C. Under the Doctrine of *Colorado River* Abstention, Continental's Motion should be Denied

In *Colorado River Water Conservation District v. United States,* 424 U.S. 800, 818, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976), the Supreme Court held that "exceptional" circumstances may "permit[ ] the dismissal of a federal suit due to the presence of a concurrent state proceeding for reasons of wise judicial administration...." *Gordon v. E. Goshen Twp.*, 592 F. Supp. 2d 828, 842–43 (E.D. Pa. 2009). *Colorado River* remains a narrow exception to federal district courts' "virtually unflagging obligation ... to exercise the jurisdiction given them." *Id.* (citing *Colorado River*, 424 U.S. at 817; *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 18,

9

103 S.Ct. 927, 74 L.Ed.2d 765 (1983) (requiring "exceptional circumstances" to justify the district court's stay); *IFC Interconsult, AG v. Safeguard Int'l Partners, LLC,* 438 F.3d 298, 305 (3d Cir.2006) ("Federal district courts may abstain from hearing cases and controversies only under 'exceptional circumstances where the order to the parties to repair to state court would clearly serve an important countervailing interest.' ") (citing *Colorado River,* 424 U.S. at 813, 96 S.Ct. 1236); *Ryan v. Johnson,* 115 F.3d 193, 196 (3d Cir.1997) ("[I]n *Colorado River,* the Supreme Court recognized that there are certain extremely limited circumstances in which a federal court may defer to pending state court proceedings...."). A district court may only exercise its discretion and dismiss an action in favor of concurrent state proceedings under the limited conditions prescribed by the Supreme Court in *Colorado River* and *Moses Cone. Ingersoll–Rand Fin. Corp. v. Callison,* 844 F.2d 133, 136 (3d Cir.1988). The standard established by the Supreme Court is referred to as the "exceptional circumstances test." These factors are:

> (1) the assumption of jurisdiction by either court over property; (2) the inconvenience of the federal forum; (3) avoidance of piecemeal litigation; (4) the order in which the courts obtained jurisdiction; (5) the forum with the substantive law that governs the merits of the litigation; and (6) the adequacy of the state forum to protect the parties' rights. *McMurray v. De Vink,* 27 Fed.Appx. 88, 91 (3d Cir.2002) (non-precedential); *Rycoline Prods., Inc. v. C & W Unlimited,* 109 F.3d 883, 890 (3d Cir. 1997).

*Id.* Ultimately, "the decision whether to dismiss a federal action because of parallel state-court litigation does not rest on a mechanical checklist, but on a careful balancing of the important factors as they apply in a given case, with the balance heavily weighted in favor of the exercise of jurisdiction." *Id.* (citing *Moses Cone,* 460 U.S. at 16).

In this matter, jurisdiction has been contested by Continental (and Hartzell) in New York. While Plaintiffs opposed those motions, and prevailed as to Continental, particularly in light of the wake of the Supreme Court's recent decision in *Ford Motor Co. v. Bandemer*, 140 S. Ct. 916

(2020), the threshold question of jurisdiction has not been resolved. There are no exceptional circumstances supporting dismissal of this matter, particularly at this procedural standpoint, and given the request for a stay by Continental. If Continental's challenge in New York is unsuccessful, the parties will litigate there, particularly given the presence of other tortfeasors in that litigation, as Continental details at length in its motion. However, at this point, abstention is inappropriate, and Continental has not shown a sufficient basis for the exercise of this doctrine.

### D. Plaintiffs' SAC Names the Appropriate Parties

The Plaintiffs in this suit include the Estate of Gerard Bocker, who perished in the conflagration after the aircraft impacted his house. His widow, Barbara Bocker, has been appointed as the personal representative of his Estate and brought claims both on his behalf, and individually, as she lost the value of her house and the contents within it. Both Hannah and Sarah Bocker were injured in the crash and have their own independent claims for their injuries.

Continental complains that Plaintiffs' claims in their SAC contains improper claims for individuals under wrongful death and survival. Plaintiffs included the names of each of the beneficiaries in an abundance of caution to ensure that Continental had adequate notice of the potential claimants. Without a determination of choice of law on damages, it is premature to dismiss claims by these individuals.

### E. Plaintiffs' Claims for Strict Liability and Breach of Warranty are Properly Brought

There have been no determinations on choice of law in this matter. Continental's motion prematurely assumes that Delaware law will govern Plaintiffs' claims; however, this issue is not ripe. Moreover, given the fact that this was a New York crash injuring New York residents involving an engine manufacturer and rebuilder outside of the State of Delaware, it is premature to apply Delaware substantive law and dismiss claims for strict liability and breach of warranty.

### F. Leave to Amend Should be Granted if this Court is Inclined Grant Continental's Motion

Alternatively, if the Court is not inclined to deny Continental's Motion, Plaintiffs request leave to amend under Fed. R.C.P. 15(a)(2).

> Federal Rule of Civil Procedure 15(a)(2) of the Federal Rules of Civil Procedure provides that after a responsive pleading has been filed, a party may amend its pleading "only with the opposing party's written consent or the court's leave," and "[t]he court should freely give leave when justice so requires." The decision to grant or deny leave to amend lies within the discretion of the court. *See Foman v. Davis,* 371 U.S. 178, 182 (1962); *In re Burlington Coat Factory Secs. Litig.,* 114 F.3d 1410, 1434 (3d Cir. 1997). The Third Circuit has adopted a liberal approach to the amendment of pleadings. *See Dole v. Arco,* 921 F.2d 484, 487 (3d Cir. 1990). In the absence of undue delay, bad faith, or dilatory motives on the part of the moving party, the amendment should be freely granted, unless it is futile or unfairly prejudicial to the non-moving party. *See Foman,* 371 U.S. at 182; *In re Burlington,* 114 F.3d at 1434. An amendment is futile if it is frivolous, fails to state a claim upon which relief can be granted, or "advances a claim or defense that is legally insufficient on its face." *Koken v. GPC Int'l, Inc.,* 443 F.Supp.2d 631, 634 (D. Del. 2006).

*Adger v. Governor John Carney*, No. CV 18-2048-LPS, 2021 WL 1198723, at *3 (D. Del. Mar. 30, 2021). While they respectfully submit the amendment has cured the issues raised by Continental's latest motion to dismiss, should this Court be inclined to grant Continental's motion Plaintiffs seek leave to amend.

### III. CONCLUSION

As an initial matter, there is no dispute that this case should be stayed pending the determination of the New York court on Continental's personal jurisdiction challenge. Further, Plaintiffs' claims set forth in their SAC against Continental are specifically enumerated, and fully satisfy the federal pleading requirements. Therefore, Defendant Continental's Motion to Dismiss/Strike should be denied.

Dated: September 6, 2022            Respectfully submitted,

FARNAN LLP

/s/ Michael J. Farnan
Brian E. Farnan (Bar No. 4089)
Michael J. Farnan (Bar No. 5165)
919 N. Market Street, 12th Floor
Wilmington, DE 19801
Telephone: (302) 777-0300
Fax: (302) 777-0301
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

Michael S. Miska (admitted *pro hac vice*)
The Wolk Law Firm
1710-12 Locust Street
Philadelphia, PA 19103
Telephone: (215) 545-4220
Fax: (215) 545-5252
mmiska@airlaw.com

*Attorneys for Plaintiffs*